1  Manfred P. Muecke (SBN: 222893)
   mmuecke@manfredapc.com
2  **MANFRED, APC**
3  600 West Broadway, Suite 700
   San Diego, CA 92101
4  Telephone: (619) 550-4005
   Fax: (619) 550-4006
5

6  *Attorney for Plaintiff*

7

8

9          **UNITED STATES DISTRICT COURT**
          **EASTERN DISTRICT OF CALIFORNIA**
10

11 | Linnea Whitney, on behalf of herself      | Case No.:
   | and others similarly situated,
12 |
13 |                          Plaintiff,       | **CLASS ACTION COMPLAINT**
   | vs.
14 |
   | Suburban Propane, L.P.,                   | **DEMAND FOR JURY TRIAL**
15 |
16 |                          Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Upon information and belief, Plaintiff Linnea Whitney ("Plaintiff") on behalf of herself and others similarly situated, by her undersigned attorney, alleges as follows:

## **INTRODUCTION**

1.     This action concerns unlawful billing practices imposed on Plaintiff and other consumers (collectively, the "Class") by Defendant Suburban Propane, L.P. ("Suburban Propane" or "Defendant") concerning quantities of propane gas that were not and could not have been reasonably consumed by Plaintiff and the Class.

2.     Shortly after the start of the COVID-19 pandemic in early 2020 and the imposition of a State of Emergency by the Governor of California, Plaintiff and the Class were besieged by unconscionably high bills proffered by Defendant for volumes of propane gas that far exceed any reasonable amount that would be consumed by Plaintiff and the Class.

3.     Despite numerous and vociferous challenges to Defendant's bills by Plaintiff, Defendant has steadfastly refused to correct its egregious billing errors and reissue billing statements that accurately reflect the propane gas consumed by Plaintiff and the putative Class.

4.     Defendant's patently unfair billing practices violate the California state Rosenthal Fair Debt Collection Practices Act. Cal. Civ. Code §1788, *et seq*. Defendant has also breached the implied covenant of good faith and fair dealing owed to Plaintiff and the Class by engaging in unlawful billing practices. Defendant

has also been unjustly enriched by its unlawful billing practices that also give rise to a violation of the California's unfair competition statute at Cal. Bus. & Prof. §17200, *et seq*.

## PARTIES

5.     Plaintiff Linnea Whitney is a former resident of Siskiyou County and still maintains an account with Defendant for past delivery of propane gas to her previous residence in Siskiyou County.

6.     Defendant Suburban Propane, L.P. is a Delaware limited partnership headquartered in Whippany, New Jersey. Suburban Propane is a wholly owned limited partnership entity of Suburban Propane Partners, L.P., ("Suburban Propane Partners") a publicly traded Delaware limited partnership.

7.     Plaintiff reserves the right to amend this Complaint to name Suburban Propane Partners as an additional Defendant upon discovery.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under claims arising pursuant to 28 U.S.C. §1332, *et seq*.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 *et seq*. inasmuch Plaintiff resides in this District and because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district. Venue is also proper in this Court under 18 U.S.C. §1965(a) because Defendant regularly transacts substantial business in this District.

## INTRADISTRICT ASSIGNMENT

10.     Pursuant to Civil L.R. 120(d), this action may be properly assigned to the U.S District Court of the Eastern District of California in Sacramento because a substantial portion of the events or omissions giving rise to the dispute occurred in Siskiyou County.

## FACTUAL ALLEGATIONS

**Suburban Propane Markets And Delivers Propane Gas In Siskiyou County**

11.     Siskiyou County is located in the northern most region of the state of California with a comparatively low population of approximately 44,000 who are spread throughout various semi-rural and rural areas in the region.

12.     As such, many residential and business consumers in Siskiyou County are utterly reliant upon Suburban Propane and other suppliers of propane gas to provide critically necessary fuel to enable use of household and business appliances, including heat during winter months when temperatures regularly drop below freezing thresholds.

13.     In turn, the climate in Siskiyou County becomes warmer during the spring, summer, and early fall months of the calendar year which generally leads to lesser demand for propane gas by consumers who are not actively heating their respective households and businesses.

14.     Suburban Propane generally delivers propane gas to residences and businesses within Siskiyou County on a monthly basis. Suburban Propane generally delivers propane gas to consumers and businesses either through a common

municipal gas line or to a propane gas storage tank that sits on a residential or commercial property.

15.     To determine the propane gas consumed by a business or consumer residence, a representative of Suburban Propane will read the gas meter at the business or residence to measure the volume of propane gas consumed during a certain time period on an approximate monthly basis for billing the business or residence for the propane gas actually consumed during the applicable time period.

**Defendant Billed Plaintiff and Its Customers
For Propane Gas That Was Not Consumed**

16.     From at least 2020 onward, Defendant billed Plaintiff and the Class for amounts of propane gas that were not actually consumed by its customers. The extraordinarily high amounts falsely billed by Suburban Propane varied drastically from the facially plausible bills that had previously been issued to Plaintiff and the Class.

17.     Propane gas consumption is generally measured in units or quantities in British Thermal Units ("BTUs"), cubic feet, or standard gallon units.

18.     To illustrate Defendant's unconscionable billing practices, Plaintiff was billed in June 2020 for approximately 24,225 cubic feet of propane gas consumed over nearly two months which is roughly equivalent to nearly 61 million BTUs of

propane gas. [1] According to data furnished by the U.S. Energy Information Administration[2], the annual propane gas consumption for households in the Western region of the United States was 27 million BTU in 2015 which equates to approximately 10,731 cubic feet of propane gas. As such, Defendant's June 2020 billing statement falsely states Plaintiff and her husband consumed over twice the average annual household consumption of propane gas over a two-month period in the mild spring season months spanning from April through early June 2020.

19.     Defendant's exorbitant billing practices strain credulity as it is virtually impossible for its customers to have consumed the amount of propane gas set forth on the patently false billing statements issued by Suburban Propane to Plaintiff and the Class.

**Plaintiff Has Suffered From Defendant's Unlawful Billing Practices**

20.     On December 2, 2019, Plaintiff contracted with Suburban Propane to have Defendant provide propane gas to Plaintiff's residence on a regular basis. See Exhibit A. Plaintiff further agreed to pay Defendant on a per gallon unit basis as expressed consistently throughout Defendant's contract. Payment to Defendant for consumption of propane gas would be based on a meter read at the residence for

---

[1] For propane gas unit conversions, see generally https://portal.ct.gov/DRS/Publications/Policy-Statements/1992/PS-92-10-1(*last accessed* April 8, 2022); and https://www.eia.gov/energyexplained/units-and-calculators/ (*last accessed* April 8, 2022)

[2] 2015 Residential Energy Consumption Survey: Energy Consumption and Expenditure Tables – Table CE2.5 Annual household site fuel consumption in the West  - totals and averages, 2015; U.S. Energy Information Administration; Release Date: May 2018; *available at*: https://www.eia.gov/consumption/residential/data/2015/c&e/pdf/ce2.5.pdf (*last accessed* April 8, 2022)

CLASS ACTION COMPLAINT - 5

propane gas "applicable to Customer." Plaintiff also agreed to pay a $150 security deposit to Suburban Propane as requested by Defendant to start residential service.

21.     On June 30, 2020, Suburban Propane issued a billing statement to Plaintiff in the amount of $4,443.25 based on a purported consumption of 24,225 cubic feet of propane gas. See Exhibit B. This egregious dollar amount and stated consumption of propane gas far and away exceeds any reasonable consumption of propane gas that Plaintiff could have undertaken.

22.     Further, Defendant elected to present bills for propane gas purportedly consumed by Plaintiff and the putative class in cubic feet units of measurement which is inconsistent with the gallon units of measurement called out in the form contract set forth by Defendant.

23.     Reasonably believing an administrative calculation error had been made by Defendant, Plaintiff's husband engaged in a series of phone calls on behalf of Plaintiff with the local office of Suburban Propane in an attempt to resolve what appeared to a clear billing error.

24.     Stunningly, Defendant stood firm, refused to substantiate its outlandish billing statement, and elected not to correct the June 30, 2020 billing statement.

25.     Plaintiff understandably refused to pay the June 30, 2020 statement without a substantial correction made to reflect the actual and facially reasonable consumption of propane gas consumed by Plaintiff for the time period reflected in the June 30, 2020 statement.

CLASS ACTION COMPLAINT - 6

26.     Notably, Defendant did not submit any written demands detailing or otherwise supporting its June 30, 2020 billing statement.

27.     After several phone conversations, Defendant suggested a broken or malfunctioning meter may have been the cause of the erroneous statement. As such, Defendant appeared to credit or otherwise correct the $4,443.25 amount previously demanded by Defendant.

28.     In billing statements issued by Defendant to Plaintiff issued on September 30, 2020 onward until May 14, 2021, Defendant did not reference the $4,443. 25 amount billed on June 30, 2020 and as such, Plaintiff reasonably believed the billing error had been resolved.

29.     Yet on May 14, 2021, Defendant doubled down on its unlawful billing practices by issuing yet another unconscionable billing statement in the amount of $7,186.25 based on Plaintiff's purported consumption of 37,203 cubic feet of propane gas consumed over a period of nearly two months which again, could not have been reasonably consumed by Plaintiff and her husband.

30.     Again, Plaintiff and her husband engaged in a frustrating series of calls with Defendant that did not culminate in any effort by Defendant to either support its billing or otherwise correct what appeared to a manifestly gross billing error. Plaintiff steadfastly refused to pay the May 14, 2021 billing statement until a corrected billing statement was issued by Defendant.

31.     Suburban Propane even undertook scorched earth tactics by sending a company representative out to Plaintiff's residence with a directive to shut down Plaintiff's access to propane gas from the common municipal gas line for failing to pay Defendant's utterly false billing statements. Thankfully, the company representative who arrived at Plaintiff's residence with this directive chose not to undertake such a drastic measure.

32.     As of date, Plaintiff and her husband have since relocated to another region in California, but Plaintiff is unable to close out her account with Defendant and obtain a refund of their $150 security deposit remitted by Plaintiff at the inception of service.

33.     Even more, Defendant has deleted all of Plaintiff's online access to previous billing statements and invoices it previously issued to Plaintiff. Instead, Suburban Propane has summarily issued what appears to be a contrived outstanding balance owing in the amount of $9,999.99 that is not supported by any documentation of purported consumption of propane gas by Plaintiff. See Exhibit D.

34.     Plaintiff has incurred substantial time, effort, and expense as well as considerable anxiety and stress in trying to resolve the egregious billing practices of Defendant.

**Defendant Refused To Support Its Claims For Its Unconscionable Bills**

35.     Suburban Propane has failed to undertake any efforts to substantiate the high bills it has issued to Plaintiff and other customers.

36.     Defendant has not issued documents, conducted testing of meter equipment, or undertaken any other measures that would support the extraordinarily high bills it has issued to Plaintiff and the Class.

37.     Even more, Defendant has limited its interactions with Plaintiff and other members of the class concerning challenges to its billing practices to telephone conversations while carefully avoiding any detailed or otherwise informed written documentation concerning its billing practices beyond the billing statements at issue.

**Plaintiff And The Class Continue To Be Subject**
**To Defendant's Unlawful Billing Practices**

38.     The economic harm to Plaintiff and the Class stemming from Suburban Propane's unlawful billing practices is hardly confined to customers of Defendant who reluctantly paid the high amounts billed to them to ensure continued delivery of propane gas.

39.     Indeed, other residential and business customers who have understandably refused to have pay these exorbitant sums have struggled to recoup previously paid deposits upon a termination of their propane gas agreements with Defendant.

40.     Pointed public statements gathered from online reviews of Suburban Propane in Yreka, Siskiyou County submitted through the Google platform underscore the issues confronted by Plaintiff and the Class as illustrated below.

"Closed my account in early October after moving. Was still charged for all of October as the meter read didn't happen for another three weeks. It is now

almost January and I still have not received my deposit, after placing a call I was informed that suburban "doesn't know" why my deposit hasn't been mailed (this is after multiple phone calls over the last few months trying to get my deposit back). This is unprofessional business practice and I hope to never have to deal with Suburban Propane in Yreka again." – Rewpert

"Delivery was good and earlier than expected. Price is unreasonable and I consider it Price Gouging. I will be inquiring with the State Attorney Generals [sic] office about Price Gouging of the Public. I would not recommend Suburban to anyone for propane service. Gasoline keeps going down in price while Propane goes up for no apparent reasons." – Jim Powell

"Horrible!!!!! I've lived here 5 years, my average cost of propane was 1500$ then it went up to 3300$ okay, I've been paying that, no problem.. NOW I got a bill stating from Jan to Sep I used almost 6,000$ of propane!!!!!!!!!!!!! That would mean I'd been filled up once a month! That's BS! This is down right HORRIBLE! There's NO WAY you could use 500$ worth of propane a month! No WAY!" – katie Barnes

41.    Plaintiff and other Class Members continue to be beset by Defendant's unconscionably high invoices for propane gas that was never consumed as well as potential collection efforts on unlawful billing statements that would require time, expenses, and resources to defend.

**Suburban Propane's Arbitration Clause Is Unlawful**

42.    Suburban Propane issued an arbitration clause in its Service Agreement in the form of an addendum. See Exhibit A.

43.    Plaintiff contends the language in the arbitration provision is unlawful and renders the arbitration provision void.

44.    Plaintiff intends to vigorously contest any invocation of the arbitration provision by Defendant to Plaintiff's claims as set forth herein.

## CLASS ACTION ALLEGATIONS

45.     Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiff brings this action individually and on behalf of all similarly situated individuals.

46.     The proposed class is defined as follows:

All Siskiyou County consumers who were billed by Defendant for unconsumed propane gas at any time during the applicable statute of limitations.

47.     The members of the class are so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, there are thousands of individuals in the class. The identities of the class members can be determined from Suburban Propane's records.

48.     Plaintiff reserves the right to amend the proposed class definition upon discovery and a motion for class certification.

49.     There are questions of law and fact common to the class that predominate over questions solely affecting individual members.

50.     The common questions of law and fact include, but are not limited to:

a.  Whether Suburban Propane falsely billed its customers for volumes of propane gas they did not consume;

b.  Whether Suburban Propane collected monies and has retained security deposits in connection with its unlawful billing practices;

c. Whether Suburban Propane violated the implied covenant of good faith and fair dealing;

d. Whether Suburban Propane's billing practices violated the Rosenthal Fair Debt Collection Practices Act;

e. Whether Suburban Propane was unjustly enriched as a result of its unlawful billing practices;

f. Whether Suburban Propane's failure to provide accurate billing statements for propane gas to its customers is unfair; and

g. The proper measure and calculation of damages.

51.    The questions of law and fact listed above will yield common answers for Plaintiff and the class as to whether Suburban Propane is liable for the alleged legal violations.

52.    Plaintiff's claims are typical of those of the members of the class. Plaintiff, like other class members, was subject to the unlawful practices described herein.

53.    Plaintiff will fairly and adequately protect the interests of the class and has retained counsel experienced in complex class action litigation.

54.    Class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) because Suburban Propane has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class.

55.    This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members. A class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of similar litigation, individual plaintiffs often lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Suburban Propane's policies and practices. There will be no difficulties in managing this action.

56.    In the alternative, class treatment is appropriate under Fed. R. Civ. P. 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of judicial economy.

## CLASSWIDE CAUSES OF ACTION

### COUNT I
**Breach of Contract**
**Violation of the Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Putative Class)**

57.    Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

58.    Plaintiff and the members of the putative class purchased propane gas from Suburban Propane and performed their contractual obligations thereunder.

59.   Suburban Propane owed Plaintiff and the members of the putative class a duty of good faith and fair dealing by virtue of their contractual relationship.

60.   Under the propane gas delivery agreements, Suburban Propane had the discretion to bill customers based on its own reading of meters at the residence or business where propane gas was delivered and stored for consumption by Defendant's customers.

61.   Plaintiff and the members of the putative class had a reasonable expectation that Suburban Propane would exercise this discretion fairly and in good faith, without depriving Plaintiff and the members of the putative class of their right to be billed accurately and honestly for propane gas actually consumed.

62.   Suburban Propane's failure to proffer accurate bills for propane gas in the unit measurements set forth in the service agreement actually consumed has disappointed the legitimate expectations of Plaintiff and the members of the putative class of being billed only for the propane gas actually consumed.

63.   Suburban Propane's conduct has thereby deprived Plaintiff and the members of the putative class of one of the key benefits of their contracts and constitutes a willful violation of the obligation of good faith and fair dealing owed to Plaintiff and the Class for the improper purpose of unfairly maximizing revenue from overcharges and retention of security deposits paid by Plaintiff and members of the putative class.

64.     In addition, Suburban Propane gave more weight to its own interests than to the interests of its customers. This conduct violated the higher standard of good faith and fair dealing to which providers of critically essential household fuels are held due to the special relationship existing between provider and customer, which is characterized by elements of public interest, adhesion, and fiduciary responsibility.

65.     Suburban Propane consciously and deliberately acted with a lack of good faith, despite knowing that its conduct violated statutory and common law, thereby disappointing the reasonable expectations of Plaintiff and the members of the putative class that bills for propane gas services would accurately reflect the actual propane gas consumed.

66.     Plaintiff and the members of the putative class have been injured as a direct and proximate result of Suburban Propane's unlawful conduct.

67.     Plaintiff seeks all available individual and class-wide remedies including restitution, applicable interest, injunctive relief, and reasonable attorney fees and costs.

## COUNT II
### Unjust Enrichment/Quasi-Contract
### (On Behalf of Plaintiff and the Putative Class)

68.     Plaintiff pleads this Count in the alternative to his other Counts herein.

69.     As a result of Suburban Propane's failure to accurately and honestly bill its customers for propane gas actually consumed by its customers as described herein, Suburban Propane has been unjustly enriched.

70.     Suburban Propane was enriched under such circumstances that it cannot conscientiously retain its gain at Plaintiff's and the putative class's expense.

71.     Plaintiff and the members of the putative class have been injured as a direct and proximate result of Suburban Propane's unlawful conduct.

## COUNT III
### Violation the Rosenthal Fair Debt Collection Practices Act
### Cal. Civ. Code § 1788, *et seq*.
### (On Behalf of Plaintiff and the Putative Class)

72.     Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

73.     The Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") generally prohibits unfair and unlawful debt collection practices, including attempts to collect a debt based on false and misleading communications. Cal. Civ. Code § 1788.1(b)

74.     Suburban Propane is considered a debt collector under the Rosenthal Act. Cal. Civ. Code §1788.2(c).

75.     The Rosenthal Act incorporates certain provisions of the Federal Debt Collection Practices Act ("FDCPA") which prohibits false representations concerning the … "character, amount, or legal status of any debt." Cal. Civ. Code § 1788.17. (*citing* 15 U.S.C. § 1692e (2))

76. Suburban Propane violated the Rosenthal Act by attempting to collect a debt that was supported by false and misleading communications in the form of patently false billing statements issued by Defendant to Plaintiff and the Class for propane gas that was not actually consumed during the time period depicted in the billing statements.

77. Plaintiff and the Class were harmed by Defendant's violation of the Rosenthal Act in being subject to false and misleading billing statements issued by Defendant.

78. Plaintiff and the Class have also been damaged by Defendant's violation of the Rosenthal Act in the form of Defendant's collection of monies and retention of security deposits stemming from Defendant's unlawful billing practices.

79. As a result of Defendant's violation of the Rosenthal Act, Plaintiff and the Class seek actual and statutory damages available under the Rosenthal Act as well as reasonable attorney fees and costs.

**COUNT IV**
**Violation Of the California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200 *et seq*.**
**(On Behalf of Plaintiff and the Putative Class)**

80. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

81. Plaintiff and Suburban Propane are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

82.   The UCL defines unfair competition to include any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

83.   By committing the acts and practices alleged herein, Suburban Propane has engaged in unfair business acts and practices in violation of the UCL.

84.   The unlawful and unfair business acts described herein are ongoing and adversely affect not only plaintiff but also scores of residents and businesses who have been subject to the false billing practices undertaken by Defendant.

85.   Plaintiff seeks all available restitution-based remedies available under the UCL as well as public injunctive relief to ensure Defendant establishes lawful billing practices for past, current and future residents of Siskiyou County and any surrounding areas where the alleged unlawful billing practices took place.

**Violation Of The Unlawful Prong of the UCL**

86.   The UCL is violated if an underlying predicate statute, law, or regulation is also violated by Defendant.

87.   A violation of a relevant statute is an independently actionable violation of the UCL.

88.   Suburban Propane has violated the UCL through its unlawful billing practices that violate the Rosenthal Act as described above.

89.   Suburban Propane's conduct is unlawful within the context of the unlawful prong of the UCL.

90.    As a result of Suburban Propane's unlawful conduct in violation of Rosenthal Act, Plaintiff and the Subclass were harmed by Defendant's violation of the unlawful prong of the UCL.

**Violation Of The Unfair Prong of the UCL**

91.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims. Suburban Propane has violated the UCL's proscription against unfair business practices by, among other things: failing to accurately and honestly bill its consumers for propane gas actually consumed.

92.    There is no societal benefit from Suburban Propane's conduct—only harm to consumers. Suburban Propane has engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, and the gravity of its conduct outweighs any alleged benefits attributable to such conduct.

93.    California has an established public policy proscribing inaccurate and unlawful billing practices as it relates to the provision of critically necessary resources during the time of a pandemic.

94.    Suburban Propane's conduct in falsely billing for and collecting sums for propane gas not consumed by its customers offends public policy.

95.    There were reasonably available alternatives to further Suburban Propane's legitimate business interests, other than the conduct described herein.

96.    The injury caused by Suburban Propane's failure to accurately bill for propane gas actually consumed by Plaintiff and the Class is substantial in light of the facially unconscionable bills received by Plaintiff and the Class.

97.    Plaintiff and the members of the putative class have been injured as a direct and proximate result of Suburban Propane's conduct in violation of the UCL. Plaintiff and the members of the putative class lost money or property and suffered injury in fact because Suburban Propane falsely billed and collected, and continues to falsely bill and collect, monies in excess of the actual consumption of propane gas by the Plaintiff and the putative class.

98.    Plaintiff and the members of the putative class were unable to reasonably avoid these harms because the analysis required to determine the accurate billing for propane gas actually consumed by Plaintiff and the Class was and still is in the exclusive knowledge of Suburban Propane.

99.    Plaintiff therefore requests that this Court grant the relief enumerated below. Otherwise, Plaintiff and the members of the putative class may be irreparably harmed and/or denied an effective and complete remedy.

## INDIVIDUAL CLAIM

### COUNT V
**Negligent Infliction Of Emotional Distress**
**(Individually On Behalf of Plaintiff Only)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

100.   Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

101.   Defendant had a duty to Plaintiff to accurately bill Plaintiff for propane gas that was actually consumed by Plaintiff.

102.   Defendant also had a duty to timely and truthfully communicate with Plaintiff regarding any discrepancies or errors in the billing presented to Plaintiff for the delivery and consumption of propane gas.

103.   Defendant breached its duty to Plaintiff by engaging in unlawful billing practices as described herein.

104.   Particularly, Defendant breached its duty to accurately bill Plaintiff by presenting bills to Plaintiff that dramatically exceeded any reasonable consumption of propane gas that Plaintiff may have undertaken.

105.   Defendant further breached its duty to Plaintiff by failing to timely respond to outreaches by Plaintiff and her husband to resolve the billing errors in good faith.

106.   Defendant also breached its duty Plaintiff by omitting to provide any documentation or evidence substantiating the proffered billing statement that greatly exceeded the reasonable and actual consumption of propane gas by Plaintiff.

107.   Plaintiff incurred harm through time and resources expended addressing and attempting to resolve the unlawful billing practices of Defendant.

108.   In particular, Plaintiff suffered emotional distress in the form of mental distress, anguish, and anxiety by engaging in numerous phone calls and emails over several weeks and months in an attempt to resolve the egregious billing error that reflected an outrageously high dollar amount that was not actually owed to Defendant.

109.   On several occasions, Defendant left Plaintiff on hold for hours on in when Plaintiff called to attempt to discuss and resolve the billing error. Defendant also refused to direct Plaintiff to the appropriate point person or manager to discuss the billing issues when Defendant actually answered Plaintiff's call. Defendant also failed to return Plaintiff's calls on numerous occasions after Plaintiff had left repeated messages with Defendant to discuss the billing issues.

110.   In an intimidating tactic to pressure Plaintiff to pay the outrageous bills proffered by Defendant, Suburban Propane even went so far as to send a company representative to Plaintiff's residence to shut off access to propane gas which would have all but rendered Plaintiff's residence inhabitable. Thankfully, the company representative elected not to shut off Plaintiff's access to propane gas.

111.   Defendant should have readily foreseen Plaintiff would understandably incur emotional distress over the visit of a company representative with direction by his supervisor within Suburban Propane to shut off Plaintiff's access to propane gas.

112.   Defendant should have also foreseen Plaintiff would incur emotional distress as a result of the unconscionably high dollar amount on its bills issued to

1
2
3
4
5

Plaintiff via its unlawful billing practices. Defendant also should have foreseen emotional distress would result from its steadfast refusal to engage Plaintiff over a period of time that Defendant knew Plaintiff was repeatedly attempting to communicate with Defendant to contest and resolve the billing errors.

6
7
8

113.   As a result of Defendant's negligent infliction of emotional distress, Plaintiff seeks all available damages at law in an amount to be proven at trial.

9

## **PRAYER FOR RELIEF**

10
11
12

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the putative class, prays for relief as follows:

13
14

A.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

15
16
17

B.    The appointment of Plaintiff as class representative and her counsel as class counsel;

18
19
20

C.    A declaration that the practices complained of herein are unlawful and violate the laws of California alleged herein;

21
22
23

D.    A public injunction against Defendant from engaging in the unlawful practices complained of herein against Plaintiff and the general public;

24
25
26
27
28

E.    Awarding Plaintiff and the members of the putative class their damages in an amount to be determined at trial, including compensatory damages, consequential damages, punitive damages, statutory damages, and any other damages provided under relevant laws;

CLASS ACTION COMPLAINT - 23

F.    Disgorgement of, restitution of, and/or imposing a constructive trust upon, the ill-gotten gains derived by Defendant from its unjust enrichment;

G.    An order finding Defendant violated the implied covenant of good faith and fair dealing owed to Plaintiff and members of the putative class;

H.    An order awarding Plaintiff and the members of the putative class pre-judgment and post-judgment interest, as allowed by law;

I.    An order finding Defendant did negligently inflict emotional distress upon Plaintiff;

J.    An order awarding Plaintiff and the class attorney's fees, costs, and expert costs; and

K.    Such further relief as may be appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.


Dated: April 8, 2022

**MANFRED, APC**

s/ Manfred P. Muecke
Manfred P. Muecke (SBN: 222893)
mmuecke@manfredapc.com
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 550-4005
Fax: (619) 550-4006

*Attorney for Plaintiff*

CLASS ACTION COMPLAINT - 24