1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   LINNEA WHITNEY, on behalf of          No. 2:22-cv-00633 WBS AC
     herself and others similarly
13   situated,

14            Plaintiff,                    ORDER RE: DEFENDANT'S MOTION
                                            TO COMPEL ARBITRATION
15       v.

16   SUBURBAN PROPANE, L.P.,

17            Defendant.

18

19                          ----oo0oo----

20            Plaintiff Linnea Whitney brought this putative class

21   action against defendant Suburban Propane based on allegations

22   that defendant routinely overcharged plaintiff and members of the

23   putative class for propane defendant supplied.  Specifically, the

24   Complaint alleges (1) breach of contract and the implied covenant

25   of good faith and fair dealing; (2) an alternative claim for

26   unjust enrichment/quasi-contract; (3) violation of California's

27   Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code

28   § 1788 et seq.; (4) violation of California's Unfair Competition

                                   1

1    Law, Cal. Bus. & Prof. Code § 17200 et seq; and (5) negligent

2    infliction of emotional distress.  (Compl. (Docket No. 1).)

3    Defendant now moves to compel plaintiff to arbitrate her claims

4    and seeks dismissal of the action.  (Mot. (Docket No. 11-1).)

5    I.    Facts & Procedural History[1]

6         Plaintiff is a former resident of Siskiyou County who

7    has maintained an account with defendant for delivery of propane

8    gas to her now-former residence in the County since December of

9    2019.  (Compl. at ¶¶ 5, 20.)  Many County residents rely on

10   defendant and other propane suppliers for fuel to heat their

11   homes during the winter and for other purposes.  (Id. at ¶ 12.)

12   Defendant delivers propane to customers on a monthly basis.  (Id.

13   at ¶ 14.)  To determine the amount of gas used by a customer, and

14   thus the amount the customer should be billed, a representative

15   of defendant reads the gas meter at a customer's home or

16   business, which displays the amount of gas used in a given

17   period.  (Id. at ¶ 15.)  Plaintiff's service agreement with

18   defendant (the "Contract") established this procedure for

19   ascertaining payments owed to defendant.  (See id. at ¶ 20;

20   Compl., Ex. A (Docket No. 1-1).)

21        "From at least 2020 onward," however, plaintiff alleges

22   that defendant erroneously billed her and members of the putative

23   class for amounts of gas they did not actually consume.  (Compl.

24   at ¶ 16.)  For example, plaintiff alleges that defendant charged

25   her over $4,000 for a two-month usage period, billing her for an

26   amount of gas that a residential customer typically uses over the

27   ───────────────

28        [1]   All facts recited herein are as alleged in the
     Complaint, except as otherwise noted.

course of two years, which would have been "virtually impossible" for her to do in two months. (Id. at ¶¶ 18-19, 21.)  Several months later, defendant issued plaintiff a second bill, this time for over $7,000, based on consumption of an even larger amount of gas. (Id. at ¶ 29.)  Plaintiff alleges defendant has repeatedly refused to correct these erroneous bills and has since issued an outstanding balance statement of $9,999.99, which plaintiff alleges is likewise untethered to any actual gas consumption. (See id. at ¶¶ 24-33.)  She further alleges that other customers have been subject to similar practices and that they, like her, have been unable to close their accounts with defendant or recover security deposits paid to defendant pending satisfaction of their erroneous billing statements. (Id. at ¶¶ 32-41.)

        The Contract includes an arbitration agreement (the "Agreement"). (See Compl., Ex. A, at 4.)  The Agreement provides that "Customer and Suburban agree that . . . they each are waiving the right to a trial by judge or jury or to participate in a class action with respect to any Dispute." (Id.)  "Dispute" is defined so as to "be broadly interpreted to include, without limitation, any and all claim(s) arising out of or relating in any way to any aspect of the relationship between Suburban and Customer, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory." (Id.)  The Agreement exempts four categories of claims from this definition, including claims by the customer for physical injury to the customer or their property, and claims by Suburban for payment of amounts allegedly owed to it under the Contract. (Id.)

        Pursuant to the Agreement, if a Dispute is not resolved

3

1  informally between the parties, either party may commence an

2  arbitration proceeding.  The Agreement includes a clause

3  providing that arbitrations "will be governed by the Commercial

4  Dispute Resolution Procedures and the Supplementary Procedures

5  for Consumer Related Disputes (collectively, 'AAA Rules') of the

6  American Arbitration Association" ("AAA") and noting that "[t]he

7  AAA Rules are available online at www.adr.org" (the

8  "Incorporation Clause").  The Agreement further provides that

9  "[a]ll issues that relate to the Dispute are for the arbitrator

10  to decide" (the "Delegation Clause").

11  II.  Legal Standard

12          The Federal Arbitration Act ("FAA") provides that a

13  written provision in a "contract evidencing a transaction

14  involving commerce to settle by arbitration a controversy

15  thereafter arising out of such contract . . . shall be valid,

16  irrevocable, and enforceable, save upon such grounds as exist at

17  law or in equity for the revocation of any contract."  9 U.S.C.

18  § 2.  Because arbitration is a matter of contract, "the central

19  . . . purpose of the FAA is to ensure that private agreements to

20  arbitrate are enforced according to their terms."  Stolt-Nielsen

21  S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010)

22  (internal quotation marks omitted); see also Perry v. Thomas, 482

23  U.S. 483, 490 (1987) (under the FAA, arbitration agreements "must

24  be rigorously enforced") (internal quotation marks omitted,

25  alterations adopted).

26          The FAA "leaves no place for the exercise of discretion

27  by a district court, but instead mandates that district courts

28  shall direct the parties to proceed to arbitration on issues as

4

to which an arbitration agreement has been signed." <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985).  "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is a construction of the contract language itself or an allegation of waiver, delay, or like defense to arbitrability." <u>Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 24–25 (1983); <u>see</u> <u>Poublon v. C.H. Robinson Co.</u>, 846 F.3d 1251, 1259 (9th Cir. 2017) (same).

Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration.  <u>See</u> <u>Cohen v. Wedbush, Noble Cooke, Inc.</u>, 841 F.2d 282, 285 (9th Cir. 1988).  "[T]he FAA limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." <u>Cox v. Ocean View Hotel Corp.</u>, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotation marks omitted).  However, "[a]lthough gateway issues of arbitrability presumptively are reserved for the court, the parties may agree to delegate them to the arbitrator." <u>Momot v. Mastro</u>, 652 F.3d 982, 987 (9th Cir. 2011) (citing <u>Rent-A-Center, W., Inc. v. Jackson</u>, 561 U.S. 63, 68-70 (2010)).  Courts may "assume that the parties agreed to arbitrate arbitrability" only if "there is clear and unmistakable evidence that they did so." <u>Henry Schein, Inc. v. Archer & White Sales, Inc.</u>, 139 S. Ct. 524, 531 (2019) (quoting <u>First Options of Chi., Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995)).

An "express agreement" to arbitrate arbitrability,

1   evinced by a contract's "language[ ] delegating to the

2   arbitrators the authority to determine the validity or

3   application of any of the provisions of the arbitration clause,"

4   constitutes clear and unmistakable evidence.   <u>Momot</u>, 652 F.3d at

5   988 (citations omitted).   Where such evidence exists, unless a

6   party opposing enforcement of the agreement "challenge[s] the

7   delegation provision specifically, [courts] must treat it as

8   valid . . . , leaving any challenge to the validity of the

9   Agreement as a whole for the arbitrator."   <u>Rent-A-Center</u>, 561

10  U.S. at 72.

11  III.  <u>Analysis</u>

12          Defendant seeks to compel arbitration not only of the

13  underlying billing dispute between it and plaintiff, but also of

14  whether that dispute is validly subject to arbitration under the

15  Agreement.  (<u>See</u> Mot.)   Plaintiff argues that she cannot be

16  compelled to arbitrate either issue because, as a threshold

17  matter, the Agreement -- and thus the Delegation Clause, which

18  defendant contends delegates arbitrability issues to the

19  arbitrator -- is unenforceable as unconscionable and as lacking

20  mutuality.  (<u>See</u> Opp. at 15-19 (Docket No. 14).)   Thus, according

21  to plaintiff, the Agreement is exempt from the FAA's general

22  requirement that arbitration agreements be enforced according to

23  their terms.   (<u>Id.</u> at 15-16); <u>see</u> 9 U.S.C. § 2.

24      A.   <u>The Court Cannot Consider Plaintiff's Contract Defenses</u>

25          As explained below, in this case, whether the Agreement

26  is unconscionable and lacks mutuality is a question for the

27  arbitrator to decide.   Ordinarily, under the FAA, courts may

28  "refuse to enforce arbitration agreements 'upon such grounds as

exist at law or in equity for the revocation of any contract.'"
Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1622 (2018) (quoting 9
U.S.C. § 2).  Such "generally applicable contract defenses"
include "unconscionability," AT&T Mobility LLC v. Concepcion, 563
U.S. 333, 339 (2011) (quoting Doctor's Assocs., Inc. v.
Casarotto, 517 U.S. 681, 687 (1996)), and "lack of . . . mutual
assent," Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1108
(9th Cir. 2002) (citing Doctor's Assocs., 517 U.S. at 687); see
Nygaard v. Prop. Damage Appraisers, Inc., 779 F. App'x 474, 476
(9th Cir. 2019) (same).

As the Supreme Court has explained, however, where an
arbitration agreement purports to delegate questions regarding
the validity and enforceability of the agreement to an
arbitrator, courts "must treat" such delegation as valid unless
the party opposing arbitration "challenge[s] the delegation
provision specifically," Rent-A-Center, 561 U.S. at 72, based on
"generally applicable contract defenses," Concepcion, 563 U.S. at
339.  See Brennan v. Opus Bank, 796 F.3d 1125, 1133 (9th Cir.
2015) (party challenging arbitration agreement on
unconscionability grounds must also do so specifically with
respect to delegation provision to resist enforcement thereof)
(citing Rent-A-Center, 561 U.S. at 73-75).  Here, plaintiff has
argued that the Delegation Clause does not actually delegate
arbitrability to the arbitrator.  (Opp. at 10-15.)  Although she
also argues that the Agreement as a whole is unconscionable and
lacks mutuality, she does not specifically challenge the

1   Delegation Clause on these grounds.  (See id. at 16-22.)[2]  The

2   court therefore "must" treat the Delegation Clause as valid.  See

3   Rent-A-Center, 561 U.S. at 72.  Accordingly, whether the

4   Agreement itself, which is to be evaluated separately from the

5   Delegation Clause, see Brennan, 796 F.3d at 1133; (Hori Decl.,

6   Ex. 2, at 14), is enforceable -- including on grounds of

7   unconscionability and lack of mutuality -- is a question for the

8   arbitrator to decide, assuming that the relevant clauses in the

9   Agreement in fact delegate arbitrability issues to the

10  arbitrator.  The court will therefore turn to this question next.

11      B.   The Agreement Delegates Arbitrability to the Arbitrator

12          As noted, defendant argues that the Agreement delegates

13  "gateway issues of arbitrability," Momot, 652 F.3d at 987, to the

14  arbitrator, including the validity of the Agreement itself.  (See

15  Mot. at 11-12.)  It contends that the Agreement's Delegation

16  Clause, which states that "[a]ll issues that relate to the

17  Dispute are for the arbitrator to decide," (Compl., Ex. A, at 4),

18  "clearly and unmistakably delegates arbitrability issues to the

19  arbitrator."  (Mot. at 12.)

20          The court agrees.  In Momot, the Ninth Circuit

21  evaluated a clause in an arbitration agreement providing:

22          If a dispute arises out of or relates to this
            Agreement, the relationships that result from this
23          Agreement, the breach of this Agreement or the
            validity or application of any of the provisions of
24          this Section [ ], and, if the dispute cannot be
            settled through negotiation, the dispute shall be
25

26          _____
               [2]   Although plaintiff states that she "clearly and
27  unequivocally contests the delegation provision," (Opp. at 13
    n.1), she offers no argument as to why the provision itself -- as
28  distinct from the overall Agreement -- is unconscionable or lacks
    mutuality.  See Brennan, 796 F.3d at 1133.

1    resolved exclusively by binding arbitration.

2    652 F.3d at 988.  The court held that the clause, which specified

3    that "the validity or application" of the agreement was to be

4    resolved through arbitration, constituted a clear and

5    unmistakable agreement to delegate issues of arbitrability.  Id.

6         Although here the Agreement does not contain identical

7    language, its Delegation Clause sweeps even more broadly than the

8    one the Ninth Circuit addressed in Momot, as it designates for

9    arbitration "[a]ll issues that relate to the Dispute." (Compl.,

10   Ex. A, at 4 (emphasis added).)  Under a plain reading of the

11   Delegation Clause, the manner in which a Dispute is to be

12   resolved -- i.e., whether by a court or by an arbitrator, and the

13   subsidiary question of whether an agreement purporting to require

14   the latter is valid and enforceable -- is clearly an "issue[ ]

15   that relate[s] to the Dispute."  This conclusion receives further

16   support when read in the context of the Agreement as a whole,

17   which specifies that the term "Dispute," as used throughout the

18   Agreement, "shall be broadly interpreted."  (Id.)

19        As noted, the Agreement's Incorporation Clause also

20   incorporates by reference "the Commercial Dispute Resolution

21   Procedures and the Supplementary Procedures for Consumer Related

22   Disputes (collectively, 'AAA Rules') of the American Arbitration

23   Association" and includes a link to access those rules online.

24   Defendant contends these rules further establish that the parties

25   delegated threshold questions of arbitrability to the arbitrator.

26   (See Mot. at 12-13.)  Although the parties dispute the substance

27   of the second set of AAA Rules identified in the Incorporation

28   Clause, given that the AAA has evidently updated and changed the

1  name of those rules, (see Opp. at 11-12); Reply at 10-11 (Docket

2  No. 16)), no such dispute exists as to the first set of rules,

3  the Commercial Dispute Resolution Procedures.

4         Those rules provide, in a section titled

5  "Jurisdiction," that "[t]he arbitrator shall have the power to

6  rule on his or her own jurisdiction, including any objections

7  with respect to the existence, scope, or validity of the

8  arbitration agreement or to the arbitrability of any claim or

9  counterclaim." (Decl. of Lucas Hori ("Hori Decl."), Ex. 2, at 14

10 (Docket No. 12-2).)  They further provide that "[t]he arbitrator

11 shall have the power to determine the existence or validity of a

12 contract of which an arbitration clause forms a part," noting

13 that the "arbitration clause shall be treated as an agreement

14 independent of the other terms of the contract." (Id.)  Although

15 the court has concluded that the language of the Agreement's

16 Delegation Clause is sufficient to clearly and unmistakably

17 delegate threshold issues of arbitrability to the arbitrator,

18 these provisions of the AAA Commercial Dispute Resolution

19 Procedures provide additional support for this conclusion, as

20 they specify that questions regarding the "validity of the

21 arbitration agreement" or "arbitrability of any claim" are for

22 the arbitrator to decide.

23        Because plaintiff has not specifically challenged the

24 Delegation Clause "upon such grounds as exist at law or in equity

25 for the revocation of any contract," and because the court

26 concludes that the Delegation and Incorporation Clauses validly

27 delegate arbitrability issues to the arbitrator, the court will

28 order the parties to arbitrate their dispute -- including gateway

1   issues of arbitrability, unconscionability, and lack of mutuality

2   -- in accordance with their agreement to do so.  See Stolt-

3   Nielsen, 559 U.S. at 682; Dean Witter Reynolds, 470 U.S. at 218;

4   Momot, 652 F.3d at 987-88.  The court will not, however, dismiss

5   the action as defendant requests.  (See Mot. at 17; Reply at 27.)

6   Although not briefed by the parties, at oral argument counsel for

7   plaintiff requested a stay, rather than dismissal, a request the

8   court must honor.  See 9 U.S.C. § 3 (where the court is

9   "satisfied that the issue involved in [a] suit or proceeding is

10  referable to arbitration under [an arbitration] agreement," it

11  "shall on application of one of the parties stay the trial of the

12  action until such arbitration has been had in accordance with the

13  terms of the agreement").  Accordingly, the court will stay the

14  action pending arbitration.  See id.

15      IT IS THEREFORE ORDERED that defendant's Motion to

16  Compel Arbitration (Docket No. 11-1) be, and the same hereby is,

17  GRANTED.  IT IS FURTHER ORDERED that judicial proceedings are

18  STAYED pending arbitration.[3]

19      The Clerk shall close this file administratively,

20  subject to it being reopened upon the application of either party

21

22      [3]   The parties' respective requests for judicial notice
    (Docket Nos. 13, 15) are DENIED.  The documents for which
23  defendant seeks notice -- two sets of AAA rules -- are attached
    to defendant's motion; because the court is not limited only to
24  consideration of the pleadings on a motion to compel arbitration,
    the court may consider these exhibits without formally taking
25  judicial notice of them.  Additionally, because the court
    concludes that the Agreement delegates arbitrability issues based
26  on the language of its Delegation Clause, with additional support
    from the incorporated Commercial Dispute Resolution Procedures,
27  notice of additional AAA rules is unnecessary to the resolution
    of the instant motion.
28

11

after arbitration has been fully completed.

Dated:   July 14, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE